53 F.3d 343
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael FYKES, Defendant-Appellant.
 No. 94-1358.
 United States Court of Appeals,
Tenth Circuit.
 May 8, 1995.
 
 Before HENRY, McKAY and LOGAN, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant Michael Fykes appeals the dismissal of his petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. 2255. He claims that he received ineffective assistance of trial counsel and that the district court erroneously rejected this claim without affording him an evidentiary hearing. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 
 3
 Defendant was convicted in 1992 of conspiracy to distribute cocaine and possession with intent to distribute cocaine, in violation of 18 U.S.C. 841 and 846. He was sentenced to 100 months imprisonment. He argues he received ineffective assistance of counsel when his attorney failed to call two defense witnesses at trial, Craig Bramblett and Mark Horta. The attorney had subpoenaed both witnesses to testify on October 21, 1992, the day after the trial concluded. The attorney, according to his own affidavit,[2] miscalculated the anticipated length of the trial. He was unable to reschedule the testimony of either witness, did not inform the court that the witnesses were subpoenaed for the next day, and did not ask for a continuance.
 
 
 4
 To establish ineffective assistance of counsel, defendant must show both that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by his attorney's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate prejudice, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
 
 
 5
 Whether the attorney's performance was deficient and that deficiency prejudiced defendant are mixed questions of law and fact that we review de novo. United States v. Whalen, 976 F.2d 1346, 1347 (10th Cir.1992). In assessing prejudice, we "must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. We conclude, as did the district court, that defendant has not shown prejudice because there is no reasonable probability that the outcome of the trial would have been different had these witnesses testified.
 
 
 6
 The indictment charged defendant with conspiring to possess and distribute crack cocaine, and with possessing and intending to distribute crack cocaine on January 23 and 25, 1992. The government's proof largely consisted of: (1) the testimony of Phillip Dancy, an officer with the Colorado Springs Police Department, (2) the testimony of Allan Bratton, a confidential informant who had possessed and sold drugs with defendant in the past, and (3) several taped phone conversations between Bratton and defendant through which Bratton, working as a confidential informant for Officer Dancy, arranged to buy crack cocaine from defendant. Dancy and Bratton both gave detailed accounts of their dealings with defendant, including the two occasions--January 23 and 25--when defendant actually sold them crack cocaine.
 
 
 7
 Regarding the drug sale on January 23, Dancy testified that Bratton arranged to purchase crack cocaine from defendant at a local nightclub. Dancy accompanied Bratton to the club, posing as Bratton's customer. Dancy, Bratton, defendant, and some other men sat in the darkest area of the club. Appellant's App. at 79-80. Dancy, who sat two to three feet away from defendant, observed defendant pull something from the back of his pants and pass some object from his left hand to Bratton's right hand. Id. at 81-82. Dancy could not see the object; he only saw defendant's hand come together with Bratton's hand. Id. at 82. After leaving the club, Bratton gave Dancy a plastic bag containing crack cocaine. Id. at 83.
 
 
 8
 Bratton gave a similar account of the transaction at the club: Dancy searched Bratton before entering the club; they sat with defendant in the back of the club; defendant reached down the back of his pants for the drugs and gave them to Bratton; Bratton, in return, gave defendant the money; and Officer Dancy sat within reach of Bratton during the drug transaction. Id. at 165-68.
 
 
 9
 Craig Bramblett, one of the two witnesses who was never called to testify, allegedly would have contradicted the testimony about the drug transaction at the club. He worked as manager of the club on January 23, 1992. He evidently would have testified that he observed defendant and several other men enter the club that night; that, because the men wore gang colors, he kept a close eye on them all evening; that he never observed drugs or money being exchanged; and that he never saw any of the men reach into their pants pockets. Id. at 50-51.
 
 
 10
 We believe it unlikely that Bramblett's testimony would have altered the outcome of the trial. His testimony that he did not observe a drug transaction does not contradict the testimony of Dancy and Bratton that a brief and discreet transaction occurred. Dancy, who sat only two to three feet from defendant, testified that he observed the transaction by the illumination of the stage lighting. Id. at 82-83. He reiterated on cross-examination that the lighting was poor in the back of the club. Id. at 116. Bramblett was not seated with the men making the drug sale. Bramblett's view would have been diminished by poor lighting. The individuals were seated at tables, with Bratton and defendant seated next to each other. Id. at 80-81. Under these circumstances, it is doubtful that the jury would have rejected the testimony of Dancy and Bratton, based on what Bramblett did not see from a less advantageous position.
 
 
 11
 The other defense witness, Mark Horta, allegedly would have shown Bratton's bias or prejudice. Horta apparently would have testified that he saw Bratton shoot at defendant in 1991. Id. at 52. Horta's affidavit also asserted that he knew Bratton, working as a confidential informant for Dancy, had tried to set up defendant on a previous occasion by leaving crack cocaine at the bottom of the stairs to his apartment. Id.
 
 
 12
 We fail to see how such testimony would have altered the outcome of the trial. The jury knew from direct examination of Bratton that Bratton used to be friends with defendant. Id. at 147-48. Bratton purchased crack cocaine from defendant three to four times per week, id. at 144-46, and, at one point, they sold drugs together, id. at 152. The two men even shared an apartment for a short time, until they had a "falling out." Id. at 155. Bratton explained that after that "falling out," he contacted the Colorado Springs Police Department about becoming a confidential informant. Id. It was, therefore, apparent from Bratton's testimony and from his willingness to serve as a confidential informant against defendant, that Bratton might harbor some personal bad feelings against defendant. Any testimony by Horta to this same effect would have been cumulative.
 
 
 13
 Further, defendant's attorney thoroughly cross-examined Bratton. Bratton acknowledged he would receive cash and immunity from prosecution in exchange for his testimony. Id. at 184, 204. He admitted his involvement in an earlier unsuccessful prosecution of defendant for committing a drive-by shooting. Id. at 206. Horta's testimony would have added little to the substance of this cross-examination.
 
 
 14
 Finally, we note that the government's case did not depend upon Bratton's testimony. Detective Dancy gave unrebutted, detailed accounts of the drug transactions of January 23 and 25, and of other meetings and phone calls with defendant. The jury heard several tape-recorded conversations of Bratton arranging to purchase crack cocaine from defendant. Given this evidence, we cannot conclude that there is a reasonable probability that the outcome of the trial would have been different had Bramblett or Horta testified.[3] See United States v. Haddock, 12 F.3d 950, 956-57 (10th Cir.1993) (finding no prejudice in failure to investigate rebuttal testimony when conviction was supported by testimony from more than one witness).
 
 
 15
 The record conclusively shows that defendant is not entitled to relief on his ineffective assistance claim. Therefore, the district court was not required to hold an evidentiary hearing. 28 U.S.C. 2255; United States v. Estrada, 849 F.2d 1304, 1305, 1307 (10th Cir.1988).
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The copy of defense counsel's affidavit in the record is unsigned, but we nonetheless considered its contents in our analysis
 
 
 [3]
 We grant defendant's motion to file a supplemental brief. Attached to the brief is the affidavit of Sandra Harris, which states that Horta arrived at the courthouse ten minutes after the government started its closing argument. Defendant argues that his attorney knew that Horta had arrived at the courthouse but, nevertheless, failed to inform the court that Horta was available to testify. In our view, this evidence provides little support for the ineffective assistance claim because it suggests that defendant's attorney made a tactical decision not to solicit Horta's testimony. However, even assuming the decision not to call Horta was unreasonable, that decision did not sufficiently prejudice defendant's defense, as we have explained